**Anthony PALTER, Plaintiff—Appellant,**

v.

**CITY OF GARDEN GROVE; Garden Grove Police Department; Rubalcaba, Officer, Defendants—Appellees.**

No. 05–56322.

United States Court of Appeals, Ninth Circuit.

Submitted June 6, 2007 *.

Filed June 8, 2007.

Erica L. Madrid, Esq., Madrid Law Firm, Diamond Bar, CA, for Plaintiff–Appellant.

Erik Lund, Steven A. Sherman, Esq., Ferguson, Praet & Sherman, Santa Ana, CA, for Defendants–Appellees.

* This panel unanimously finds this case suitable for decision without oral argument. *See*

Fed. R.App. P. 34(a)(2).

Before: THOMAS and GOULD, Circuit Judges, and CHESNEY **, District Judge.

### MEMORANDUM ***

Anthony Palter appeals the district court's decision granting summary judgment to the City of Garden Grove ("City"), the Garden Grove Police Department ("Police"), and Officer Rocky Rubalcaba, in Palter's 42 U.S.C. § 1983 action alleging wrongful detention and psychiatric evaluation pursuant to California Welfare and Institutions Code § 5150 without probable cause.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Palter was detained by Rubalcaba pursuant to § 5150 on April 4, 2003, after 911 received a phone call from Palter's friend Lucy Pedemonti, stating that Palter was suicidal, and Rubalcaba determined that detention was appropriate.[2] Officer Rubalcaba then transported Palter to the University of California Irvine Medical Center for further evaluation. Palter was subsequently evaluated by doctors and released; at which time, Rubalcaba drove Palter back to his car.

Palter sued alleging wrongful detention and psychiatric evaluation under Cal. Welf. & Inst.Code § 5150. On July 29, 2005, the district court granted summary judgment in favor of all defendants on all causes of action. On appeal, Palter argues that Rubalcaba lacked probable cause to detain him pursuant to § 5150 and that the district court erred when it granted the defendants' motion for summary judgment.[3]

The law governing this appeal is well settled. California Welfare and Institutions Code § 5150 authorizes peace officers to take into custody any person the officer has probable cause to believe "is a danger to others, or to himself" "as a result of mental disorder." The statute further authorizes officers to place the person at a county-designated facility for "72–hour treatment and evaluation" if such a determination is made. Probable cause exists if a state of facts is known to the officer "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself." *Heater v. Southwood Psychiatric Center,* 42 Cal.App.4th 1068, 1080, 49 Cal.Rptr.2d 880, 887 (Cal.Ct. App.1996) (quoting *People v. Triplett,* 144

---

** The Honorable Maxine M. Chesney, United States District Judge for the Northern District of California, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our disposition.

2. Pedemonti relayed a number of details to the dispatcher, based on her recent telephone conversations with Palter, that caused her concern and prompted her call: (1) Palter was distraught over his break-up with his wife; (2) when Pedemonti told him that he was going to be receiving divorce papers soon he became "all worked up"; (3) Palter was in

possession of pain medication; (4) he had "been seeing a couple [of] therapists"; (5) Palter owned a gun; (6) he was "basically like on a suicide watch"; (7) he had previously talked about killing himself if his wife served him with divorce papers; and that (8) Pedemonti had been on the phone with him for over an hour, trying to calm him down, but she "couldn't even call [911] because [she] couldn't click over because [she] was afraid [Palter] was going to hang up" and do something. Rubalcaba later confirmed this information in a phone conversation with Pedemonti.

3. We review a district court's grant of summary judgment de novo. *Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir.1999) (citing *Covey v. Hollydale Mobilehome Estates,* 116 F.3d 830, 834 (9th Cir.1997)).

Cal.App.3d 283, 287–88, 192 Cal.Rptr. 537 (Cal.1983)) (internal citations omitted). "In justifying the particular intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." *Id.* In evaluating whether probable cause existed, "[e]ach case must be decided on the facts and circumstances presented to the [officer] at the time of the detention...." *Id.*

Based on the information relayed by 911 and his conversation with Pedemonti, Rubalcaba had reason to believe, at the time of detention, that Palter: (1) was about to be served with divorce papers and was upset; (2) had access to a gun; (3) was in possession of pain medication; (4) was under the care of a therapist; (5) had talked about killing himself if his wife divorced him; (6) was "basically ... on a suicide watch"; (7) had been on the phone with Pedemonti in conversations that caused her great concern; and (8) was thought by Pedemonti to have been going to his daughter's home to leave a "goodbye" note. Given this extensive and detailed information, "a person of ordinary care and prudence" would be led "to believe, or to entertain a strong suspicion," that Palter was "mentally disordered and ... a danger to himself," *see Heater,* 42 Cal. App.4th at 1080, 49 Cal.Rptr.2d 880, thereby giving Rubalcaba probable cause to detain Palter pursuant to § 5150. *See id.* (holding that mental health staff properly detained an individual against his will where his parents reported that he was depressed over the murder of his brother, threatening to track down the killers, and suicidal); *Triplett,* 144 Cal.App.3d at 285–88, 192 Cal.Rptr. 537 (holding that officer was justified in taking a woman into custody after he responded to a call of a disturbance and found a woman who "appeared to be intoxicated," "seemed upset ... [and] had been crying", and had "[t]hree or four lacerations across her wrists" of which one "appeared to be an actual suicide attempt"); *see also* Cal. Welf. & Inst.Code § 5150.

Palter contends that when Rubalcaba met him at a Denny's Restaurant in Orange, California, Palter indicated he didn't intend to hurt himself, had no note indicating suicidal intent, and was not in possession of a gun. However, Officer Rubalcaba was not required to accept Palter's advice at face value. Based on his experience conducting dozens of § 5150 evaluations during his career, Officer Rubalcaba instead chose to rely on his "experience that people who are a danger to themselves often show very different symptoms." Indeed, Rubalcaba had "seen people who were a threat of harm to themsel[ves] be very calm when confronted by the police [.]" Having heard the concerns of Pedemonti, even if contradicted by Palter's story, a reasonable officer would have probable cause to believe that Palter posed a danger to himself. Probable cause does not mean certain cause, and the purpose of the psychiatric evaluation is to have professionals skilled at evaluating mental state take some responsibility for assessing whether Palter was in danger.

Because Rubalcaba had probable cause to detain Palter pursuant to Cal. Welf. & Inst.Code § 5150 we affirm the district court's grant of summary judgment.[4]

**AFFIRMED.**

---

4. Because we hold that probable cause exist-   ed, we need not reach Rubalcaba's other ar-

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.